**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**CHARLETTE TURNER,**

    **Plaintiff,**

    **v.**

**CAROLYN W. COLVIN, ACTING**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Case No. 15-1191-CM

## MEMORANDUM & ORDER

This matter comes before the court on plaintiff Charlette Turner's Social Security Brief (Doc. 11) seeking review of the final decision of the Commissioner of Social Security, denying her supplemental security income payments.

Plaintiff initially claimed that she became disabled on January 1, 1999, at 31 years old, due to depression, hypertension, and headaches. At her administrative hearing, plaintiff amended her alleged onset date to October 12, 2011, and counsel stated that "there's a potential she can meet 1205(c)" the listing titled Intellectual disability. (Doc. 10 at 35.) In support, counsel cited a December 2006 Mental Status Examination in which Dr. Wilkinson diagnosed plaintiff with mild mental retardation. (*Id.* at 338.) Counsel additionally cited a June 2012 Mental Status Examination completed by Dr. Hough. Counsel noted that plaintiff had not completed an IQ test and asked that one be added to the record for the ALJ's consideration. (*Id.* at 55.) The ALJ responded that he would "look at the record and let you know." (*Id.*)

The ALJ found that plaintiff was not disabled in a decision dated January 6, 2014, which stands as the final decision of the Commissioner of Social Security. Plaintiff argues that the ALJ's decision is

-1-

not supported by substantial evidence. Specifically, she claims the decision is deficient because it (1) fails to discuss plaintiff's alleged intellectual disability at step two and step three of the sequential evaluation process; and because it (2) fails to consider favorable evidence from plaintiff's vocational counselors when assessing plaintiff's residual functional capacity ("RFC"). Plaintiff argues that these errors "tainted" her evaluation from steps two to five. After reviewing the record, the court makes the following rulings.

**I.  Legal Standard**

This court applies a two-pronged review to the ALJ's decision: (1) Are the factual findings supported by substantial evidence in the record? (2) Did the ALJ apply the correct legal standards? *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "Substantial evidence" is a term of art. "It requires more than a mere scintilla, but less than a preponderance." *Barnes v. Colvin*, 3 F. Supp. 3d 892, 896 (D. Kan. 2014). It "is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Lax*, 489 F.3d 1084). When evaluating whether the standard has been met, the court is limited; it may neither reweigh the evidence nor replace the ALJ's judgment with its own. *Id.* On the other hand, the court must examine the entire record—including any evidence that may detract from the Commissioner's decision. *Jaramillo v. Massanari*, 21 F. App'x 792, 794 (10th Cir. 2001) (citing *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)).

Plaintiff bears the burden of proving she has a disability as defined under the Social Security Act. *McKitrick v. Barnhart*, 364 F. Supp. 2d 1272, 1284–85 (D. Kan. 2005). A disability requires an impairment—physical or mental—that causes one to be unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Impairment, as defined by Section 423(d)(1)(A), is a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." The claimant's

physical or mental impairments must be so severe that she is "not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work . . . . which exists in significant numbers either in the region where such individual lives or in several regions in the country."  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential evaluation process to evaluate disability claims. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (citation omitted).  If at any step the ALJ makes a determination regarding disability, the claim will not be further reviewed.  *Id*.

The components of the five-step process are:

- **Step One**:  The plaintiff must demonstrate that she is not engaged in substantial gainful employment activity.  *Id*.  If the plaintiff meets this burden, then the ALJ moves to Step Two.

- **Step Two**:  The plaintiff must demonstrate that she has a "medically severe impairment or combination of impairments" that severely limits her physical or mental ability to do basic work activities.  *Id*.

    o   If the plaintiff's impairments have no more than a minimal effect on her ability to do work, then the ALJ can make a nondisability determination at this step.

    o   If the plaintiff makes a sufficient showing that her impairments are more than minimal, then the ALJ moves to Step Three.

- **Step Three**:  The ALJ compares the impairment to the "listed impairments"—impairments that the Secretary of Health and Human Services recognizes as severe enough to preclude substantial gainful activity.  *Id*. at 751.

    o   If the impairment(s) match one on the list, then the ALJ makes a disability finding.  *Id.*

    o   If an impairment is not listed, the ALJ moves to Step Four of the evaluation.  *Id*.

- **Prior to Step Four**: The ALJ must assess the plaintiff's Residual Functional Capacity ("RFC"). *Baker v. Barnhart*, 84 F. App'x 10, 13 (10th Cir. 2003) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)).

- **Step Four**: The plaintiff must show that she cannot perform her past work. *Williams*, 844 F.2d at 751. If plaintiff shows that she cannot, the ALJ moves to the last step.

- **Step Five**: Here, the burden shifts to the ALJ. The ALJ must show that the plaintiff can perform some work that exists in large numbers in the national economy. *Id*.

## II.   Discussion

### A.  The Administrative Decision

The ALJ made the following determinations:

- **Step One**: Plaintiff has not engaged in substantial gainful employment since October 12, 2011, the date of her application.

- **Step Two**: Plaintiff has a severe impairment of depression. The ALJ found that plaintiff did not have severe impairments based on: substance abuse, hypertension, aortic valve disease, obesity, personality disorder, schizoaffective disorder, social anxiety, personality disorder, or "learning disability," which the ALJ noted was not a diagnosis.

- **Step Three**: Plaintiff's impairment does not meet or medically equal a "listed impairment."

- **Prior to Step Four**: Plaintiff has the RFC to perform the full range of work at all exertional levels, with the following limitations:
    - She is limited to simple, routine repetitive tasks;
    - She is able to work in proximity to others, but is limited to jobs that do not require close cooperation and interaction with co-workers, in that she would work best in relative isolation;

- o  She is limited to no interaction and cooperation with the general public;
- o  She retains the ability to maintain attention and concentration for minimum two-hour periods, to adapt to changes in the workplace on a basic level, and to accept supervision on a basic level.

- **Step Four**: Plaintiff has no past relevant work.

- **Step Five**: There exist jobs in significant numbers in the national economy that the plaintiff can perform. Plaintiff would be able to perform light, unskilled occupations such as: bottling line attendant; burr grinder; and bag press operator.

- **Conclusion**: Plaintiff has not been disabled since October 12, 2011, the date her application was filed through January 6, 2014, the date of the ALJ's decision.

### B. Plaintiff's Claims

As mentioned above, plaintiff claims that the ALJ's decision is not supported by substantial evidence. She argues that the decision is deficient because it fails to discuss plaintiff's alleged intellectual disability throughout the sequential evaluation process; and because it fails to consider favorable evidence from plaintiff's vocational counselors when assessing plaintiff's RFC. The court agrees. The ALJ erred by failing to properly address plaintiff's intellectual disability as alleged at step two and potentially in the remainder of the decision.

#### 1. The ALJ erred by failing to address intellectual disability at step two

Plaintiff's first argument is that the ALJ failed to consider her alleged intellectual disability at step two. At step two, plaintiff has the burden of showing she has a medically severe impairment or combination of impairments that severely limit her physical or mental ability to do basic work activities. If the ALJ determines that alleged impairments have no more than a minimal effect on plaintiff's ability to do work, he or she makes a nondisability determination and moves on to step

three. In this case, the ALJ found that plaintiff's depression is medically determinable and constitutes a severe impairment. He addressed several other conditions, including: substance addiction; hypertension; aortic valve disease; obesity; personality disorder; schizoaffective disorder; social anxiety; and personality disorder, and found them non-severe. Additionally, the ALJ mentioned Dr. Hough's diagnosis of "learning disability" and stated that "learning disability" is not a diagnosis. The ALJ did not mention "intellectual disability" or "mild retardation," as Section 12.05 previously was titled, at step two.

Plaintiff put forth sufficient evidence that she has an intellectual disability that the ALJ should have considered at step two, perhaps most significantly, Dr. Wilkinson's 2006 diagnosis of mild mental retardation that counsel cited at plaintiff's administrative hearing. The Diagnostic and Statistical Manual of Mental Disorders ("DSM") defines "mild mental retardation" as an "IQ level 50–55 to approximately 70." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 49 (4th ed. 1994). In his discussion of plaintiff's RFC, the ALJ allows that Dr. Wilkinson "noted the claimant was oriented with logical thought processes but exhibited poor concentration and had only fair memory recall." (Doc. 10 at 23.) He did not discuss the fact that Dr. Wilkinson diagnosed plaintiff with mild mental retardation at any point in the decision, stating only that he afforded Dr. Wilkinson's 2006 "opinion little weight because it is too remote in nature." (*Id.*)

The Commissioner relies on Dr. Wilkinson's statement that "The medical records available to me did not mention past cognitive testing or school records that might substantiate a diagnosis of Mild Mental Retardation as stated in Ms. Turner Adimekee's allegations" to explain why the ALJ did not give the diagnosis weight or discuss it at any point in the decision. The court is not persuaded by this argument because it is taken out of context. Dr. Wilkinson's report goes on to state, "In the absence of

such testing, but best I can say her [sic] is that Ms Turner Adimekee's level of intellectual functioning appears to be consistent with an extremely low range based on her performance on attention, concentration, recall and memory, fund of information and abstraction skills." (*Id.*)  And the report goes on to diagnose plaintiff with mild mental retardation.

Although the ALJ may have found Dr. Wilkinson's report too remote in some respects, especially as plaintiff amended her onset date to October 12, 2011, six years after the report was made, courts have held that without evidence of increased intellectual functioning, there is a presumption that IQ is relatively static.  *See Heller v. Doe by Doe*, 509 U.S. 312, 323 (1993) ("Mental retardation is a permanent, relatively static condition . . ."); s*ee also Bouton v. Astrue*, No. 07-4039-JAR-JTR, 2008 WL 627469, at *9 n.4 (D. Kan. Mar. 4, 2008) (citing *Luckey v. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989); *Sird v. Chater*, 105 F.3d 401, 402 n.4 (8th Cir. 1997); *Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001)) (noting that "circuit courts have liberally construed the early manifestation requirement whereby a claimant is not required to affirmatively prove that he was mentally retarded prior to reaching the age of twenty two so long as there was no evidence that claimant's IQ has changed." (citing *McKown v. Shalala*, No. 93-7000, 1993 WL 335788, at *3 (10th Cir. Aug 26, 1993))).  It appears to the court, that absent evidence that plaintiff's IQ has changed since her 2006 diagnosis of mild mental retardation, the ALJ should have evaluated the evidence and considered whether she has a medically determinable disability.  If determinable, he should then have discussed whether such disability is severe or non-severe.

"[I]t is well settled that administrative agencies must give reasons for their decisions."  *Kepler v. Chater*, 68 F.3d 387 (1995) (quoting *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988)).  The ALJ's decision should make clear to the reviewer that he considered plaintiff's alleged intellectual disability and explain why that disability either does or does not entitle plaintiff to benefits.  The court

finds that there is significant probative evidence of plaintiff's alleged intellectual disability in the record, and because the ALJ made no findings regarding the alleged intellectual disability, the court is unable to determine whether the ALJ's findings are supported by substantial evidence or whether the ALJ applied correct legal standards. Remand is therefore necessary.

The Commissioner argues that even if the ALJ erred at step two, generally, such error is considered harmless because the ALJ continues on to consider plaintiff's RFC. *Smith v. Colvin*, 821 F. 3d 1264, 1266–67 (10th Cir. 2016) (citing *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]he failure to find a particular impairment severe at step two is not reversible error when the [administrative law judge] finds that at least one other impairment is severe.")). Plaintiff argues that the ALJ's error is not harmless, because it prevented the ALJ from considering whether plaintiff meets 12.05(C) at step three. The court agrees with plaintiff.

### 2. The ALJ erred by failing to address whether plaintiff meets listing 12.05(C)

At step three, the ALJ must decide whether plaintiff's impairment or combination of impairments meets or equals one of the listed impairments acknowledged by the Commissioner as so severe that they preclude substantial gainful work activity. *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007). "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. *Id.* (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). Plaintiff must show that an impairment meets the requirements of a listing by providing "specific medical findings that support each of the various requisite criteria for the impairment." *Id.* (citing 20 C.F.R. §§ 405.1525, 416.925 (2006)).

If in this case, the ALJ had considered and found plaintiff's alleged intellectual disability a severe impairment, he would have also considered whether it meets listing 12.05(C). Instead, because the ALJ found only plaintiff's depression a severe impairment, he discussed only listings 12.04

(affective disorders) and 12.06 (anxiety-related disorders).  If, however, the ALJ had considered whether plaintiff met 12.05(C), and determined that she did, he would have made a disability finding at that point.

The capsule definition for listing 12.05 states "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05(B) (2006).  Subsection (C) requires "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*  Therefore, to meet listing 12.05(C), plaintiff needed to present evidence that she meets the capsule definition and subsection (C).

There is evidence in the record that would support plaintiff's claim that prior to age twenty-two she had subaverage general intellectual functioning.  For example, the record indicates that plaintiff did not graduate from high school or obtain a GED and was involved in special education.  (*See* Doc. 10 at 36–42, 336, 464.)   In 2013, Jennifer Smidt, M.S., conducted a vocational assessment in which she found that plaintiff has a below first-grade reading level and that she likely would not benefit from further education. (Doc. 10 at 318–323.)  Dr. Wilkinson's Mental Status Evaluation, discussed above, diagnosed plaintiff with mild mental retardation. (Doc. 10 at 338.)  That diagnosis, as described in the DSM, requires onset before eighteen years old.  AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 49 (4th ed. 1994).  There is substantial evidence that plaintiff meets the capsule definition of 12.05, the ALJ determined that plaintiff had a severe impairment of depression meeting the third criteria, and plaintiff's counsel requested that plaintiff be administered an IQ test.

"The ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised in the nonadversarial setting of a disability hearing." *Lyles v. Barnhart*, 181 F. App'x 720, 723 (10th Cir. May 23, 2006) (quoting *Hawkins v. Chater*, 113 F.ed1162, 1164 (10th Cir. 1997)).  This is the case even when the claimant is represented by counsel.  *Wall v. Astrue*, 561 F.3d 1048 (10th Cir. 2009).  But plaintiff must still prove her disability.  She "must in some fashion raise the issue sought to be developed which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists."  *Lyles*, 181 F. App'x at 723 (quoting *Hawkins*, 113 F.3d 1167)).

The ALJ should carefully consider the evidence in the record and determine whether plaintiff has met this burden.  If on remand, the ALJ determines plaintiff has a severe impairment of intellectual disability, it is the ALJ's role to evaluate this evidence in light of the objective standards and requirements of 12.05(C) and determine whether plaintiff meets the listing.

### 3. Residual Functional Capacity determination

Plaintiff also alleges that the ALJ failed to consider evidence from plaintiff's vocational counselors when the ALJ assessed her RFC.  (Doc. 11 at 9.)  One of plaintiff's arguments relates to how the ALJ's failure to consider intellectual disability throughout the opinion affects the RFC determination.

When determining plaintiff's RFC, the ALJ was required to consider all relevant evidence in the record, including "evidence of medically determinable impairments, even those that are not severe."  *Bradley v. Colvin*, No. 15-6137, 2016 WL 1019214, at *2 (10th Cir. Mar. 15, 2016). The record need demonstrate that the ALJ considered all the evidence but he is not required to discuss every piece.  *Id.*

The ALJ makes a blanket statement that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . ." (Doc. 10 at 20.)  Normally, the court would have no reason to doubt the ALJ's assertion.  But again in the RFC section as in the rest of the decision, the ALJ does not mention intellectual disability or plaintiff's mild mental retardation diagnosis.  On remand, if the ALJ finds plaintiff's intellectual disability medically determinable at step two, he would also need to discuss it in any RFC determination.  This could potentially change any RFC determination.  Therefore the court will not make any further findings on this issue at this time.

It is possible that the ALJ did implicitly consider much of what is discussed in this order.  But the court has no way of reviewing an ALJ's determinations when they are not explained in a decision.  It is possible that the result in this case ultimately will not change.  But the court must remand because the court cannot determine with the current administrative decision whether the ALJ's factual findings regarding plaintiff's alleged intellectual disability are supported by substantial evidence in the record or whether the ALJ applied the correct legal standards to those findings.

The court therefore remands this case to the Commissioner for the purpose of making express findings in accordance with this order concerning plaintiff's alleged intellectual disability and for any further proceedings the ALJ finds necessary in light of those new findings.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in according with this Memorandum and Order.

Dated August 8, 2016, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**